(No. 13160.—Rule discharged.)

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* THEODORE L. MEYER, Respondent.

*Opinion filed October 22, 1921.*

DISBARMENT—*when attorney will not be disbarred for imprudence in handling matters for two clients.* Lack of foresight by an attorney in making an unauthorized agreement with one client to pay another client's alleged obligation to a third party, so that the former may secure the release of a trust deed held by the third party, is not ground for disbarment though the other client refuses to recognize the debt to the third party, where there is no dishonesty of purpose by the attorney nor any unfaithfulness to the interests of either client and where the controversy over the situation is subsequently satisfactorily settled.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

CHARLES S. JACKSON, for respondent.

Mr. JUSTICE DUNN delivered the opinion of the court:

By leave of court an information was filed at the December term, 1919, by the People, on the relation of the Chicago Bar Association, for the disbarment of Theodore L. Meyer. He filed an answer and the cause was referred to a commissioner, who has reported the evidence taken, with his conclusions, to which the respondent has filed exceptions.

The respondent was admitted to the bar in 1915, since which time he has been practicing law in the city of Chi-

cago.  The charge of unprofessional conduct made against
him in the information arises out of his employment by
Louis Kaplan in October, 1918, in procuring a loan for
$7000 upon certain real estate in which Kaplan was inter-
ested, which was subject to a mortgage for $6000.  Kaplan
was indebted to Louis Tusin upon a note for $553.21, which
was secured by a trust deed upon the same real estate, the
lien of which was subsequent to the lien of the mortgage.
Tusin held the note which was secured by this trust deed
but the trust deed was in the possession of Peter G. Raff,
who had been Tusin's attorney in a divorce proceeding and
had represented him also in other matters.  Tusin placed
the note in the hands of respondent for collection.  Tusin
and Kaplan appear not to have known of the existence of
the trust deed, but the respondent discovered it in his exami-
nation of the title to the property.  Neither Tusin nor Kap-
lan could give respondent any information as to where the
trust deed was, but the respondent discovered that it was
in Raff's possession.  Kaplan and the respondent called
upon Raff and asked that the trust deed be delivered to
them, but Raff refused, claiming that he held the trust
deed as security for an indebtedness of Tusin to him of $78.
Kaplan and respondent then went to see Tusin, who denied
that he owed Raff $78, though Kaplan testified that he
admitted an indebtedness of $25, while respondent testified
that Tusin denied owing Raff anything.  Thereupon Kaplan
and respondent again went to Raff and entered into the
following agreement:

"CHICAGO, ILL., *Oct. 2, 1918.*

"This is to certify that whereas Louis Tusin is indebted to
Peter G. Raff in the sum of seventy-eight dollars, ($78) and in
order to secure said sum has deposited with Peter G. Raff a certain
trust deed dated June 30, 1917, signed by Harry Skolar, for the
sum of seven hundred and fifteen and 61/100 dollars, due on or
before October 8, 1918, which trust deed is recorded in the record-
er's office of Cook Co., Ill., as document No. 6183725 on August 31,
1917; and whereas the said Louis Kaplan, the holder of the note
mentioned in the trust deed, desires to obtain a release of record of
said trust deed:

"It is therefore agreed, in consideration of Peter G. Raff delivering said trust deed to Louis Kaplan for the purpose of releasing the same of record, that the said Louis Kaplan will execute, and by these presents does execute and deliver, his judgment note for said sum of seventy-eight dollars, ($78) payable to the order of Peter G. Raff, in ten days after date; and the said Louis Kaplan further agrees, in consideration of the above, to deposit in escrow with Theodore L. Meyer, in cash, the sum of seventy-eight dollars ($78) as soon as the loan for $7000 is made and the money is paid over the American State Bank on the premises mentioned in said trust deed, on the express agreement that if said seventy-eight dollars is paid to Peter G. Raff the said Peter G. Raff shall return the note above mentioned to Louis Kaplan.

"And the said Theodore Meyer hereby agrees to deliver said sum of seventy-eight dollars ($78) to the said Peter G. Raff not later than ten (10) days from date, or as soon as the loan above mentioned is closed and the money paid over to Louis Kaplan.

"In witness whereof the above named parties have hereunto signed their names and affixed their seals the day and year first above written.

|  |  |
|---|---|
| LOUIS KAPLAN, | (Seal) |
| THEODORE L. MEYER, | (Seal) |
| PETER G. RAFF. | (Seal) |

October 2, 1918.

"Received the trust deed above mentioned.—Louis Kaplan."

Raff delivered the trust deed in accordance with this agreement and it was released and the loan of $7000 was completed. After the payment of the first mortgage of $6000 and interest and some other items of indebtedness by Kaplan there remained $307.42, for which a check was given to Kaplan, who endorsed and delivered it to the respondent. He had previously made two payments to respondent—one of $25 and one of $40. Out of these sums various payments in connection with the loan were made, amounting to $89.90, and there still remained due to respondent an attorney's fee of $25 and to Tusin $593.70, principal and interest on his note against Kaplan. Tusin insisted that he did not owe the $78 to Raff and refused to pay it. Kaplan was unwilling to pay it unless Tusin would consent to the credit for it upon Kaplan's indebtedness to Tusin. Respondent represented Tusin in the collection of his note against Kaplan, and the amount which he had received from Kaplan was not enough to pay the

indebtedness to Tusin. He had received no money from Kaplan with instructions to pay the $78 to Raff, though Kaplan testified that he expected the respondent to pay it from Tusin's money and that respondent said he would pay Raff, and that respondent told him, "I will pay it up; you pay up your notes and I will pay it up myself." It seems from the evidence that Kaplan expected the respondent to pay the $78 note but that it should be paid out of Tusin's money, and that Tusin claimed that he did not owe Raff and would not consent to its payment out of his money. The note was not paid and Raff endorsed it to B. Finkelstein, who caused judgment to be entered upon it. Kaplan desiring to escape payment of the note, first employed the respondent to act as his attorney, but afterward the respondent, stating that it might be necessary for him to defend, advised Kaplan to employ Charles S. Jackson to represent him. Jackson thereupon made a motion to open the judgment, and in support of it filed an affidavit, sworn to by Kaplan, that he had a good and meritorious defense to the whole of the plaintiff's claim, in that the note was made payable to Raff, and, becoming due in ten days from the second day of October, 1918, was paid by the defendant to Meyer in accordance with the agreement entered into with Raff at the time of the delivery of said note, and that the plaintiff was not a *bona fide* and innocent purchaser for value before maturity but came into possession of the said note after maturity. A copy of the agreement between Raff, Kaplan and the respondent was attached to this affidavit. The motion to open the judgment was granted, and the trial of the case on January 15, 1919, resulted in a finding in favor of the plaintiff, assessing damages of $93.50. Kaplan was afterward required to pay this judgment, and did pay in July or August, 1919, in satisfaction of the judgment and costs, the sum of $116. In June, 1919, Kaplan and the respondent had made a settlement in which the respondent had accounted for all the money which he had received

from Kaplan, and thereupon Kaplan executed to Tusin his notes for the balance due Tusin of $271.18. One of the notes was for $121.18 and was assigned by Tusin to the respondent. After Kaplan had paid the $116 he demanded that the respondent return it, and employed J. H. Perkinson, a lawyer, to collect it for him. Perkinson first demanded of respondent $485.47 but later reduced his demand to $121. Respondent said that rather than have any trouble he would pay $78 and might pay $121, and later Perkinson told the respondent that Kaplan would not accept less than $121, which respondent said he would pay by giving Kaplan credit on the note which he held against him, and Perkinson refused, saying that Kaplan wanted the cash, and respondent then said that if Kaplan would not take what he was offered he would not pay anything at all. After this, Perkinson, in the name of Kaplan, made a complaint to the committee on grievances of the Chicago Bar Association, and on October 21, 1919, served a copy of such complaint upon the respondent, who filed his written answer on October 22, 1919. On January 26, 1920, the controversy between Kaplan and the respondent was settled for $130, which was paid by giving Kaplan credit for that amount upon the notes which Tusin held against him.

The substance of the whole matter is that Tusin employed the respondent as his attorney to collect his debt from Kaplan, and upon Tusin's recommendation Kaplan employed the respondent as his attorney in procuring the loan, which would provide Kaplan with the means of paying Tusin. In the course of examining the title for procuring the loan the respondent discovered that Raff was in possession of the trust deed, which he claimed to hold as security for an indebtedness from Tusin to Raff. Tusin denied the indebtedness, or, at any rate, the amount of it, but Kaplan, in order to get possession of the trust deed and clear his title, gave his note to Raff for the amount Raff claimed and agreed to deposit the amount of the note with the respondent

as soon as he received the money on the loan, and the respondent agreed to pay the amount to Raff within ten days or as soon as the money on his loan should be paid over to Kaplan. Tusin was no party to this agreement and refused to authorize the deduction from the amount due to him from Kaplan of the amount claimed by Raff from Tusin which Kaplan had agreed to pay. It was no doubt anticipated that the proceeds of the loan would be sufficient to pay the first mortgage and also Kaplan's debt to Tusin, but as it turned out it was more than $200 short. Kaplan was then unwilling to pay the note which he had given in order to clear his title unless Tusin would credit the amount of Kaplan's indebtedness to him. Tusin was unwilling to do so, and the respondent, who was Tusin's attorney, had no right to do so without Tusin's consent. When Kaplan paid the $307.42 from the proceeds of the loan, and the $65 additional which he paid to the respondent, he did not direct the respondent to pay Raff. Tusin, who was the holder of the second encumbrance, was entitled to the proceeds of the loan after the payment of the first mortgage and the expenses of procuring the loan. The respondent had bound himself to pay Raff, Kaplan was bound to pay Raff, but the respondent could not pay the debt without making himself liable to Tusin, though at the same time Kaplan would be liable to re-pay the respondent. Kaplan testified that the respondent said that he would pay Raff, but the debt was Kaplan's debt, and if the respondent had paid it Kaplan would still have owed the amount to the respondent. When neither the respondent nor Kaplan paid the amount of Kaplan's note to Raff, judgment by confession was entered against Kaplan; and on his motion the judgment was opened for the purpose of permitting him to make the defense that the money had been deposited with the respondent in accordance with the agreement of October 2 between the respondent, Kaplan and Raff, and that thereby the note was paid, and that the plaintiff, in whose

favor judgment was entered, was not an innocent purchaser for value but held the note subject to this defense. Kaplan testified that the respondent was his attorney, but the respondent testified that while at first he represented Kaplan, he stated that he also might become a defendant to the suit and therefore withdrew from the defense and advised Kaplan to employ another attorney, Charles S. Jackson, as his attorney, and Jackson testified that he acted as Kaplan's attorney and the matter in court was presented by Jackson.

The respondent was under no professional obligation to Raff. His only obligation to him was on his written contract. Raff was not his client but Tusin and Kaplan were his clients. Raff is not making any complaint, and the only complaint he could make, if he desired to, was that the respondent did not comply with his obligation to pay Kaplan's note. The respondent did not fail in his obligations to either of his clients, Tusin or Kaplan. He collected Tusin's debt so far as it was collectible and made a settlement which is satisfactory to Tusin with Kaplan, by which Kaplan received credit on his indebtedness to Tusin. As far as the evidence indicates, respondent has never received any compensation for the services he rendered Kaplan except $25 which Kaplan paid him, and Kaplan has had the benefit of the credit of $130 on his notes to Tusin, for which there appears to have been no consideration except Kaplan's doubtful claim for reimbursement of the amount paid by him in satisfaction of the judgment and his costs. The respondent was lacking in judgment and foresight in entering into the agreement with Kaplan and Raff without the assent of his client, Tusin, to the payment, but his conduct, as shown by the evidence, does not indicate dishonesty of purpose or unfaithfulness to the interests of either of his clients. The rule will therefore be discharged.

*Rule discharged.*